ANNA BOHMERT, Respondent, *v*. WILLIAM R. BOHMERT, Appellant.

First Department, May 29, 1925.

Husband and wife — separation — action by wife on ground of cruelty — counterclaim by husband on ground of abandonment — complaint dismissed at trial after plaintiff had testified that she did not care to proceed — evidence shows that plaintiff abandoned defendant without intention to return — offers by plaintiff to return were not made in good faith — action for separation should not be instituted by wife to force husband to accede to her wishes — error to admit evidence of plaintiff's offers to return which were made long after action was commenced — error to find that defendant abandoned plaintiff — defendant's offer to resume marital relations were made in good faith — defendant is entitled to decree on counterclaim.

In an action instituted by the plaintiff for separation from the defendant, her husband, on the ground of cruel and inhuman treatment, in which the defendant interposed a counterclaim for separation based on abandonment by the plaintiff, and at the trial the plaintiff's complaint was dismissed after she testified that she did not desire to proceed, the evidence establishes that the plaintiff, who evidently married the defendant for financial reasons, abandoned the defendant without any intention to return and assume her marital relations with him, and that the offers made by the plaintiff long after the action was commenced to resume marital relations were not made in good faith, but for the purpose of preventing the defendant from securing a decree.

The plaintiff had no right, as contended by her counsel, to commence this action for separation for the purpose of compelling the defendant to accede to what the plaintiff insisted she was entitled to in relation to the place where the parties lived.

It was error for the court to admit in evidence the alleged offers made by the plaintiff to resume marital relations with the defendant, which offers were made long after the action was commenced.

It was error for the court to find that the defendant abandoned the plaintiff by reason of his refusal to receive her back upon her asserted willingness to return. On the other hand, defendant's offer made after the plaintiff had first abandoned him, to resume marital relations, was made in good faith.

On all the evidence the defendant is entitled to a decree of separation from the plaintiff.

APPEAL by the defendant, William R. Bohmert, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of June, 1924, upon the decision of the court rendered after a trial at the New York Special Term in so far as it dismisses on the merits defendant's counterclaim in an action for separation.

*Henry Goldstein* [*Max D. Steuer* of counsel; *Samuel Gottlieb* and *Gustave B. Garfield* with him on the brief], for the appellant.

*Caldwell & Polhemus* [*William O. Gennert* of counsel], for the respondent.

MERRELL, J.:

This action was brought by the plaintiff to obtain a decree of separation from her husband, the defendant, by reason of the alleged cruel and inhuman treatment of the plaintiff by the defendant. The complaint specified some twenty-three acts of alleged cruelty and misconduct on the part of the defendant toward the plaintiff which the plaintiff alleged rendered it improper and unsafe for her to continue to reside with the defendant. By his answer the defendant denied each and every allegation of the complaint charging him with cruelty or improper conduct toward the plaintiff and denied that by reason of the alleged misconduct set forth in plaintiff's complaint the plaintiff suffered as alleged in the complaint, and that thereby it became improper and unsafe for the plaintiff to continue to reside with the defendant.

As a separate and distinct defense and by way of counterclaim the defendant set forth and alleged in his answer that the plaintiff, without cause or reason, deserted and abandoned the defendant at the home of the parties at Mamaroneck, in the county of Westchester, State of New York, and the defendant demanded judgment in his said answer upon the counterclaim therein alleged for a decree of separation from the bed and board of the plaintiff.

To defendant's counterclaim plaintiff replied denying the allegation of the counterclaim that she had abandoned the defendant, and further answering said counterclaim alleged that by reason of uniform and continuous cruel and inhuman treatment of the defendant towards the plaintiff and because he failed to properly provide for her, set spies upon her, had her shadowed by detectives, refused her the privilege of having friends visit her home, struck and assaulted the plaintiff, used vile and abusive language to her, and otherwise treated the plaintiff in a cruel and inhuman manner, the plaintiff was forced to and did leave the defendant's home for her own protection and for her peace and comfort, as fully set forth in her complaint, the allegations of which were repeated by reference in said reply.

Plaintiff's action was commenced by the service of a summons and complaint and motion papers upon an application for temporary alimony and counsel fees on June 21, 1923. Plaintiff's application for temporary alimony and counsel fee was denied, the learned justice presiding at the Special Term which heard said application holding that the moving affidavits and complaint did not show that the plaintiff had reasonable ground for commencing her action, and that it did not appear that there was reasonable probability that she would succeed in establishing facts sufficient to warrant a decree of separation, the learned court at Special Term basing such decision of the plaintiff's application upon the authorities of *DeVide* v. *DeVide* (186 App. Div. 814) and *Heyman* v. *Heyman* (119 id. 182). Thereafter and on April 24, 1924, the action came on for trial at Special Term. At the opening of the trial plaintiff abandoned her claim for a separation from the bed and board of the defendant and offered to return to the home of the defendant and resume her marital duties. The plaintiff took the witness stand and freely testified that she did not desire to proceed to prove the allegations of her complaint for the purpose of obtaining a separation from her husband on the ground of cruelty and that she was willing to return to her husband's home and to her husband and to resume her marital duties. Thereupon, upon motion of the defendant, the court dismissed the plaintiff's complaint. Counsel for the plaintiff then moved to dismiss the defendant's counterclaim, which motion was denied, and the trial proceeded upon the issue set forth in the defendant's counterclaim that the plaintiff had on June 18, 1923, abandoned the defendant without his consent.

The parties were married on June 7, 1920. No issue was born of such marriage. The defendant was a widower and the plaintiff had divorced a former husband. The defendant was a man of

means and maintained a home at Orienta Point, Mamaroneck, in the county of Westchester. This home was a pretentious one and situated in an exclusive neighborhood and was all apparently that one could desire. The evidence shows, however, that the plaintiff was not satisfied with the country home which the defendant had provided for her and from the first found fault with her surroundings and her home. Plaintiff preferred to reside in New York city, nearer the theatres, amusements and excitement of the metropolis. But a little over a year after the parties had taken up their residence at Mamaroneck the plaintiff left her husband and went to the city of Buffalo. The plaintiff upon the trial insisted that such departure was but a temporary one, and that she intended after a time to return to her husband. That claim, however, would seem to be refuted by a letter which the plaintiff addressed to her husband from Buffalo some time after her arrival there. In the course of this letter plaintiff wrote the defendant as follows: " Will, it is too bad to have a man, with what you have, and can enjoy life in your own way — to be tied to a woman that you think so unworthy — and of course you know under present conditions we will never be any more to each other as you claim Orienta for your home the rest of your life, and I never could live there again, and of course I understand the way you feel too. So whenever you feel like that you want to be free, do not hesitate as I will free you at your request. I hope to start in business Monday if I am able. * * * If I am not asking too much of you, will you please send me my old brown coat, as it may be useful to me, and you know I am starting all over again and I do hope that you will not think evil of me; as I made a mistake as well as yourself before our marriage, but you know it, and so did I. Whether you believe me or not I do care for you, but could not live in the house any longer especially after you struck me."

Certainly the letter from which the above quotations are made did not evince any intention of leaving the defendant temporarily but very clearly expressed the intention of the plaintiff that her action in severing her relations with the defendant was final. Nevertheless, thereafter the plaintiff wrote the defendant that she was ill and had been advised that an operation was required and called upon the defendant to furnish the money necessary for such operation. In response to such request the defendant asked the plaintiff to return to New York, which she did, and the required operation was performed, the defendant paying all expenses, hospital and medical charges, and for nursing, which the plaintiff required. The marital relations of the parties were thereupon resumed and the parties resided for a time at 212 West Seventy-second street,

New York city.  The plaintiff admitted upon the trial that the conduct of the defendant toward her at this time was kind and considerate.  Later the parties returned to their home at Mamaroneck.  The evidence shows that the defendant, to satisfy the wishes of his wife, thereupon expended some $22,000 in repairs and alterations to the Mamaroneck home.  He also gave the plaintiff a bank account of $1,000, and the plaintiff admitted that for a time she was very happy in the remodeled home at Mamaroneck.  That such home was a pleasant one and all that the plaintiff could reasonably wish appears conclusively from the evidence, plaintiff's witness Florence Rose testifying that " The home in which Mrs. Bohmert lived at Mamaroneck is well appointed and all that one of refinement and education could desire,  *  *  *."  It would seem, however, that the plaintiff's contentment at Mamaroneck was short lived.  Indeed, while the plaintiff professed upon the trial an affection for the defendant, her husband, the evidence would seem to indicate that her marriage with the defendant was one of convenience and for what the plaintiff regarded her financial advantage rather than by reason of any real affection or regard which she entertained for the defendant.  The defendant was a man of considerable means.  The plaintiff had divorced her former husband.  According to the testimony of Irene Fronenberger, formerly in the employ of the parties, the plaintiff stated: " That she was very unhappy, that although Mr. Bohmert had fixed the house over for her and had everything fixed over and everything nice as new, and he gave her pretty much everything she wanted, she was very unhappy because she did not love Mr. Bohmert and there was no way that she could be happy with him."  Mrs. Fronenberger was apparently an absolutely disinterested witness and was not in the employ of either party at the time of the trial.  This witness further testified that the plaintiff said that she loved her first husband, but that he did not have any money, and that she had married Mr. Bohmert because she knew he had plenty of money and he was more able to care for her than her first husband.  The testimony of a neighbor and intimate friend of the plaintiff throws considerable light upon the motives actuating the plaintiff in her conduct toward the defendant.  This neighbor, Ida Darling, with whom plaintiff testified at the trial she was always friendly and was often in her company, testified that early in 1923 the plaintiff told her " she was rather dissatisfied with things and that she thought she would leave there," and that in May, 1923, the plaintiff told this witness " that they had a serious quarrel, she and Mr. Bohmert, and he regarded it that she was in the wrong this time, but she was going to see the thing

through and see just what was going to happen." The witness Darling further testified that Mrs. Bohmert came to her house in June, 1923, and stated to her that she could not stand it at the defendant's home; " that it was a dump," and that after she had gotten the money from the case she was going to California to live. She said that legally she might be forced to go back to the house in Mamaroneck, but she said she would only stay there twelve hours " because she would make it so hot for him that she would be put out." On cross-examination the witness Darling testified that she saw the plaintiff frequently and that they were very good friends and that there had been no change in their friendship, and that they were still friends.

Such attitude of the plaintiff towards the defendant would seem very clearly to indicate that her marriage with the defendant was for the purpose of what she conceived was her financial advantage rather than because of any affection or regard for him. The facts that have just been stated readily explain the conduct of the plaintiff immediately following her conversation with these disinterested witnesses. On June 18, 1923, the plaintiff went to New York and consulted counsel, and on the same day returned to her home in Mamaroneck accompanied by one Florence Rose, a private detective whose employment had been with the district attorney as an investigator. The woman, Rose, was introduced to the plaintiff by the senior member of the firm of attorneys whom she employed to institute an action for separation against her husband, and the detective was paid by plaintiff's said attorney for her services in accompanying the plaintiff to the home of the parties. The witness Rose testified that on the 18th of June, 1923, she accompanied the plaintiff to the home of the parties at Mamaroneck; was ushered into the home by a maid; that tea was served in the private apartment of the plaintiff in that home; that thereafter a call was made upon a neighbor, and that upon the defendant's return to his home in the evening the plaintiff introduced her to the defendant. Miss Rose testified: " She said, ' This is Miss Rose whom I think you remember meeting at Helen's funeral.' " The Helen referred to was a sister of the plaintiff who died and was buried at Buffalo, N. Y. The defendant disclaimed any recollection of every having met Miss Rose, but the plaintiff insisted that he had done so at her sister's funeral. During this' episode the witness Rose remained silent and permitted the deception to continue. Evidently the defendant became suspicious that all was not well and refused to permit the so-called friend to remain in his household. At the time the defendant requested that Miss Rose leave his home he specifically stated to his wife that he did

not wish her to leave, but wished her to remain, as testified by Officer Goetz, whom defendant summoned, and the plaintiff retorted: " Put us out if you want to, I dare you to, and I want you to do so." The detective refused to leave and it became necessary for the defendant to call said police officer and to eject her from the house. Upon the defendant's insistence that the so-called friend leave and with the presence of the police officer the plaintiff ordered a taxicab, and the detective, accompanied by the plaintiff, left the defendant's home. On the 21st day of June, 1923, the plaintiff, in company with the detective, returned to Mamaroneck and service of the summons and complaint with motion papers for temporary alimony and counsel fee was made upon the defendant. The witness Rose, in explanation of her conduct in allowing the plaintiff to deceive her husband under the representation that the detective was a friend of the plaintiff's, made the transparent claim that she went to the plaintiff's home at the request of the plaintiff's attorney with the intention of acting as a companion for her and to nurse and care for her, although it did not appear that she was either a trained or professional nurse nor that the plaintiff was suffering from any ailment. It is perfectly plain that the witness Rose was introduced by the plaintiff into their home for the purpose of procuring evidence upon which her attorneys could frame a complaint and establish a cause of action which might entitle her to a decree of separation from her husband, with provision by way of alimony and counsel fee. The testimony of the witness Rose is such as to indicate that she had little regard for the sanctity of an oath, and it was extremely fortunate that the defendant forcibly ejected her from his home before she had the opportunity to lay any foundation for the desired action.

Upon plaintiff's application for temporary alimony and counsel fee in June, 1923, the defendant, in his answering affidavits, offered to receive the plaintiff back into his home and to resume his marital relations with her. This offer the plaintiff refused to accept and proceeded in the prosecution of her action and in the application which she had made for temporary alimony and counsel fees. After the denial of her application for nearly eight months and until February, 1924, the plaintiff made no further move, but at that time, evidently under the advice of counsel, wrote the defendant that she was willing to return. Such offer was rejected by the defendant, the defendant insisting that the plaintiff had abandoned her home and him and that it was then too late for her to resume her relations with him.

After a careful examination of the testimony in this case we have not the slightest doubt but that the plaintiff was inspired throughout

with the desire to obtain money from the defendant and that the plaintiff was willing to resort to any means to accomplish such purpose. Having been disappointed in her effort to obtain temporary alimony and counsel fee, she then apparently was willing to return to her husband, leaving it to future chance to obtain evidence upon which she could obtain her support and maintenance in more congenial surroundings to her than the country home of the parties at Mamaroneck.

Had the plaintiff been able to establish even a small part of the allegations of cruel and inhuman treatment alleged in her complaint, she would have been granted the decree which she asked. It is quite apparent, however, from the record that no real cause justifying her complaint existed, and that the defendant's treatment of the plaintiff was uniformly kind and considerate. Not only is this evidenced by her abandonment upon the trial of all claim of such cruel and inhuman treatment, but it is borne out by her own admissions upon the witness stand that the defendant was kind and indulgent toward her. On cross-examination plaintiff testified in answer to an inquiry as to whether she and the defendant had a lot of differences during their married life, that the same were " ordinary — like any married couple would have." Plaintiff would not say upon the witness stand that she was terribly abused nor that her husband was ever unreasonable with her, except in one respect, evidently referring to his refusal to give up the home at Mamaroneck. The testimony of the plaintiff upon the trial minimizing the sworn statements of extreme cruelty contained in her complaint shows how little she regarded the sanctity of an oath. Throughout her testimony the plaintiff insisted that it was her intention at all times to return to her husband's home and that she never intended when she left the home on June 18, 1923, to remain permanently away therefrom. Plaintiff claims that when her action was brought she intended to resume her marital relationship with her husband; that when she moved for alimony and counsel fees it was with the intention that her separation should be only temporary; that when she moved for the examination of the defendant before trial, she then intended to return to her husband; and that she never at any time intended to leave her husband, except for a temporary period, and she makes the astounding claim that her action was brought for the real purpose of effecting a reconciliation with her husband. Such testimony on the part of the plaintiff was with the evident purpose of bringing herself within the doctrine laid down in *Silberstein* v. *Silberstein* (218 N. Y. 525), wherein the Court of Appeals indicates that a separation will not be granted because of abandonment where it appears that

it might have been the intention of the party charged with abandoning to return. In the *Silberstein* case the action was brought by the wife against her husband for cruelty and that he had failed and neglected to provide for her, and that he had abandoned her. No counterclaim was set up in the answer of the husband, nor did he set up the wife's misconduct in justification. The trial court in that case found that the wife left her husband with the intent not to return. Subsequently the wife offered to return but her offers were rejected and she thereupon brought action against her husband for refusing to take her back and for abandonment. To that complaint the husband pleaded the former judgment in bar; and the Court of Appeals, overruling such plea, held that the wife might have intended merely a temporary absence until the action was decided, moved, perhaps, by some sense of delicacy or fitness to refuse to share her husband's home while her suit against him was pending, and that if her absence was not, in fact, an abandonment, it was the defendant's duty to take her back. So in the case at bar the plaintiff testified upon the trial that she left her husband upon the institution of her action from a sense of delicacy, and intended to return to him eventually. Every fact and every act on the part of the plaintiff belies such claim. The abandonment of the defendant by the plaintiff just prior to the commencement of her action on June 21, 1923, was not the first time that the plaintiff had left and her succeeding conduct demonstrated conclusively that it was not then her intention, as she claimed upon the trial, to return to her husband after the action had been determined. The action was quite unjustified and was for the plain purpose of forcing money from the defendant. Failing in such attempt, nearly eight months after the denial of her motion for alimony and counsel fees the plaintiff offered to return to her husband and to resume her marital relations with him. Plaintiff's counsel admitted that the belated offers which the plaintiff made to return to her husband were offered merely as a defense " to stop the husband's action." In other words, such offers to return were merely to prevent the defendant's obtaining a decree of separation by reason of the plaintiff's abandonment of him and thereby cutting off any chance of the plaintiff forcing him to pay alimony. Counsel for the respondent takes the rather astounding position that it was the right of the plaintiff to change her mind and to return to her husband at any moment up to the time a decree was entered against her. It will be borne in mind that the reply herein, served in behalf of the plaintiff, alleged no offer to return, and in effect admitted that she had left the defendant, but justified her action by reason of his cruelty

toward her. Such allegations of cruelty she abandoned at the trial and finally virtually admitted that they were without real foundation.

We are of the opinion that the abandonment of the defendant by the plaintiff on June 18, 1923, appears from the overwhelming weight of the evidence and that the defendant should have been granted a decree of separation upon his counterclaim. We are, furthermore, of the opinion that the offers of the plaintiff to return and to resume her marital relations with the defendant were not made in good faith, but were made merely for the purpose of preventing the defendant obtaining a decree against her. It is suggested in support of the respondent's position that she had an entire right to bring her action with a view of compelling the defendant to accede to what the plaintiff insisted was her due and that she had a right to bring such action without intending that any actual separation of the parties should be thereby effected. The plaintiff had no right to thus play fast and loose with the processes of the court. Either the plaintiff had a good cause of action against the defendant, and, if so, should have pursued the same, or the action should never have been brought. We are of the opinion that the latter course should have been adopted by the plaintiff, and that there was really no legal justification in the plaintiff's action or in her leaving the defendant's home. In *Uhlmann* v. *Uhlmann* (17 Abb. N. C. 236) it was held that " The test seems to be to determine the intent at the time of departure, for if the desertion be in itself complete, a subsequent offer to return will not avail, as the deserted party has a legal right of which he cannot be deprived without his concurrence. This was so held in England after the period of two years had elapsed (there required), but the principle would seem to be the same in the New York statute, where no time is required (*Cargill* v. *Cargill*, 1 Sw. & Tr. 235)." In some jurisdictions statutory provision is made that a desertion must last for a specified period of time, and that the offer to return, *if made in good faith* before the expiration of that time, eliminates the essential element of intent. The whole matter, it seems to us, rested on the intent of the party leaving the household of her spouse. If she really intended to temporarily leave the same and eventually to return, then such leaving did not constitute an abandonment, but if, on the other hand, where as in the case at bar, the facts evidenced an intention to leave and to remain away from the home of the husband permanently, then the party leaving should not be permitted to return and her husband be compelled to receive her at any time she might see fit to change her mind. (*Cargill* v. *Cargill*, 1 Sw. & Tr. 235.)

We think the learned Special Term erred in the case at bar in

receiving evidence of plaintiff's offers to return home long after the present action was brought. We also think the trial court erred in finding that the defendant had deserted the plaintiff by reason of his refusal to receive her back upon her asserted willingness to return. There was no such allegation of abandonment or desertion contained in either the complaint or reply of the plaintiff and there was no evidence upon the trial justifying such finding, nor do we find any evidence supporting the finding of the learned court at Special Term that the offer of the defendant to resume marital relations with the plaintiff, made at the time she moved for temporary alimony and counsel fee, was not made in good faith.

The judgment appealed from, in so far as it dismisses the counterclaim interposed by the defendant herein, should be reversed, and a judgment of separation granted to the defendant against the plaintiff by reason of the latter's abandonment of the defendant.

CLARKE, P. J., FINCH and MARTIN, JJ., concur.

Judgment so far as it dismisses counterclaim reversed, and judgment of separation granted to defendant. Settle order on notice.